The narrow issue before the Court this morning is whether the immigration judge erred when he determined that the Rosas committed alien smuggling when the Rosas children entered the United States with validly issued border crossing cards. In this case, Mr. and Mrs. Rosas applied for cancellation of removal and adjustment of status for certain non-permanent residents under INA Section 240AB. In order for an applicant to meet the requirements of this section, they must establish four things. This case hinges on the second one, a finding of good moral character. Here, the immigration judge determined that Mr. and Mrs. Rosas were statutorily ineligible to establish good moral character because he found that they committed alien smuggling under INA Section 212, which is commonly referred to as alien smuggling. Under this section, an alien smuggler is defined as any alien What is a border crossing card exactly? Your Honor, a border crossing card is a document that's given to, in this case, both Canadians and Mexicans who are citizens of Mexico, but it allows the person to travel into the United States for a period of up to 72 hours and for a distance of up to 25 miles. Okay. And there's no question that that's what it allows? Yes, Your Honor. And did Mr. Rosas bring the kids across on Mrs. Rosas' border crossing card? Yes, Your Honor. And their names were on it? Yes, Your Honor. It's, you know I just wanted to try to get a handle on what exactly it is. Yes, Your Honor. Mr. Rosas had his own card. The second youngest child had his own. The three of the other children were put on Mrs. Rosas' card. Their names? Their names were on there. The immigration judge found this case that was validly issued to all the parties and that they were valid at the time of entry. So I think in this case, the cards themselves It's okay for him to bring people across on her card? Yes, Your Honor. It's because they're on there as well, and I'm not sure if it's because they're minors or why they were put on there. But the immigration judge in this case did not have a problem with that. And my understanding is that that's proper. Okay. Yes, Your Honor. Because the card is for 72 hours within 25 miles, if, as is conceded here, someone uses the card for the purpose of living permanently in the United States, why isn't that squarely in violation of the entry laws? Well, Your Honor, I think there's two answers to that. And the first one is the most important thing is these cards were issued long before the entry in this case. Yes. And it's hard to believe that they're valid since, of course, they require non-residents and employment not in the United States. But be that as it may. Yes, Your Honor. This type of entry is not covered by the narrow language of Section 212. The 212 very, very narrowly defines alien smuggling simply as an entry in violation of law. The presentation of the border crossing documents in this case was not in violation of law. Well, it's in violation of law if you know that you're using that card as a fraudulent means to live in the United States. It's not a problem if you're using it to come across for 72 hours. Well, Your Honor, I would say most importantly, though, if you contrast the language in Section 212 with language in Section 274, I think more commonly known here is the 1324, which is defined or titled bringing in and harboring certain aliens. If you look to that, a sub-four specifically criminalizes any person who encourages or induces an alien to come to enter or reside in the United States. And it goes on to find that if you're not knowing or in reckless disregard of the fact that such coming to entry or residence will be in violation of law. But that's putting the focus on what happens later. Yes, Your Honor. I'm saying if you use a facially valid document, let's assume it is valid, if you use a facially valid document for the purpose of entering the United States to live here, that is to stay beyond 72 hours. Why isn't that an entry that's not permitted by the document that you're showing? Well, Your Honor, the entry, what it comes down to is, again, was the card valid, the issue, and accepted? In this case, it was accepted. I understand it was accepted, but you could have used my passport. If you get across and somebody accepts it, that doesn't mean that the entry was valid. Your Honor, that would be a different situation. And in fact, that would also be covered under a different section of the INA. In this case, the immigration judge could have found that this was a crime of moral turpitude because they were committing a fraud. The judge didn't find that in this case. I understand that. But look, just help me answer this, just a simple question. Okay. If the document that is facially valid allows you to come into the country for 72 hours and within 24 miles, and you come across the border using that card to stay more than 72 hours and to go to San Francisco, what's legal about it? Well, Your Honor, in that case, anything that occurred would happen after you traveled further than the 25 miles. Your intent. Or stay longer. Your intent when you give them that document. Well, Your Honor, and I think what the immigration judge did in this case is he determined that if you combine a mens rea with an actus reus, then a crime must exist. But that's in contrast as well to Section 212 itself. 212 finds that nonimmigrants are allowed to enter if they're in possession of a valid border crossing identification card at the time of admission. And 212 doesn't say, you know, parent, paren, and you agree to abide by the terms, or paren, you agree to abide by the regulations. In this case, the entry was admissible and therefore legal because the border crossing cards were valid at the time. And under the negative implication doctrine, when determining a statute, determining the statutory construction of a statute, when courts are to interpret statutes in such a way as to not make other portions of a different statute in the same act meaningless or language in that superfluous. And constructing 212 as broadly as Section 274, the bringing in and harboring provision, then it makes the separate language in 274 superfluous because the words reside in and residence in violation of law would have no meaning. And with that, I'd like to reserve the rest of my time. Unless you have more. May it please the Court. My name is Nicole Nardone. I'm the attorney for the Respondent of the United States. The only question for the Court is whether the immigration judge determined, properly determined that the plaintiff's fraudulent entry, I'm sorry, the fraudulent use of border crossing passes to bring their children to live in the United States permanently constituted smuggling under Section, INA Section 212A6E, and thus precluding them from establishing good moral character necessary for cancellation of removal. Because the Petitioners have been found removable in this case, it is their burden to establish eligibility for cancellation of removal. And the Court should uphold the immigration judge's finding that the Petitioners failed to meet the burden because their actions constituted alien to smuggling. The Court must defer to the immigration judge's interpretation of the smuggling regulation unless it finds that it is clearly contrary to the plain meaning and sensible meaning of the statute. Has the Board ever addressed this particular regulation? Is there any Board precedent that is helpful here? Your Honor, I have not found a case that's directly on point by the Board. There's an unpublished case that has a very similar factual situation, but – You mean a Board decision? Yeah. There's not a published case that directly addresses the issue. That's right. There is a case, however, if you're asking the question with regard to whether or not streamlining was appropriate, there was a case in the Ninth Circuit of U.S. v. Anglin. I'm sorry, that's not the case. It's U.S. v. Bunker, which addressed a similar situation where, as the Court recently has been inquiring, involved a situation under the criminal smuggling statute, but also involved a case where an employer in the United States had used border crossing passes in a very similar manner that they were used here to shuttle aliens back and forth across the border for purposes of employment in California at his ranch. That's different, though, isn't it? And he was really engaged in big-time smuggling. Sure. I agree. I mean, I think the facts were more egregious in that case. However, I believe that in this case, when you look at the plain meaning of the statute, I think the Court has to find that the immigration's interpretation was clearly consistent with that meaning of the statute, finding essentially that, in this case, Mr. Rosas knowingly used these border crossing passes to enter the United States, I'm sorry, to bring his family into the United States, knowing that, with the intent and testified readily to the fact that it was his intent at the time to reside in the United States and have his children reside in the United States. Not only did he admit to having the intent at the moment he entered, but he and his wife also admitted to having committed a number of acts that indicated that they intended to avert the suspicions of the Immigration Service upon their entry. There were a number of things that they did, including, for example, Mr. Rosas had a work authorization card at the time that he entered with his children, but he didn't use that card. Rather, he used his own border crossing pass to enter into the United States so as to not raise the suspicions of the Immigration Service that he was bringing his children to live in the United States permanently. Mr. Rosas and Mrs. Rosas also planned to not bring the furniture over with their children in one trip, and they admitted to this. The reason was because they didn't want the Border Patrol to be suspicious of the fact that they may be bringing the children to live permanently in the United States. So I believe it is all of these factors. When you look at these factors in the case, clearly the immigration judge was properly found that this was a violation of the statute. All of which can be true, yet doesn't squarely confront the argument that Mr. Ellis makes, which is that, nevertheless, the documents were valid for entry, and that what was invalid occurred after that. Well, I would argue, Your Honor, that the entry itself, the documents themselves Well, first that the entry was invalid, but also that the use of the documents was also invalid. In order to obtain these documents, to obtain the border crossing pass, an alien must submit an I-90 form, and on that form there is an agreement that they commit to abiding by the terms of that border crossing pass. Meaning that they swear to an oath, essentially, that they are going to abide by the terms of that pass. But that doesn't really go to the heart of the issue of whether this is smuggling, does it? Well, I would say it does. Smuggling, as defined in the plain meaning of the statute, is simply knowing, assisting, and aiding an alien to enter or try to enter the United States in violation of the law. Now, it doesn't specify that it has to be in violation of the law and without valid papers. There can be such a thing as entry into the United States with valid papers, but with a fraudulent intent to use those papers to obscure the purpose of your entry. And what if after they had crossed, they were persuaded that they were going to get into trouble, so they took the children back? What would happen? Would they still be guilty of smuggling? Well, I believe if they had crossed with the intent to... I believe so. If they had crossed with the intent, and they had the intent, and they submitted the papers with the fraudulent intent, and they had gone through these... They crossed them legally, and then they take them back. And you're saying that's smuggling. Well, I would think that if all these steps were shown, and they had admitted in a hearing that they had gone through these different processes to obscure the suspicions of the Immigration Service, and it also made arrangements to have their children live in the United States permanently, that at that point, there could be a violation. At the moment they crossed, really, that is what the statute focuses on, is at that moment they crossed, whether or not they had the intent to violate the law. And in contrast to Petitioner's argument that the criminal statute really is... under which the immigration judge arrested the finding of alien smuggling was narrower than INA Section 274A1A. In that statute, the language residing is clearly being punished. It's not a focus on the entry, as the statute is. Really, here, the focus is on that moment that they crossed the border. It does not concern whether or not the alien has later on acquired an intent to remain in the United States. And I believe 274 is a broader statute. This one is more specific, but the immigration judge focused on that entry alone and found that that entry indicated that... to fraudulently use the border crossing passes to bring the children to the United States to live permanently. You know, what we're ultimately looking at is whether this is smuggling that would prevent them from showing that they had good moral character. That's right. Do we add in the additional element that they're simply trying to reunite the family and this is not the kind of smuggling that was intended by the statute? I think, Your Honor, the fact that this is... this violation of the statute and the way it's applied in this case, it's applied to deny the petitioner's cancellation of removal, which is a discretionary remedy that the board has. So, therefore, there doesn't need to be such an extreme showing in order for the board to find... Well, it's not discretionary to determine whether they meet the statutory bar or not. No, that is correct. That's not discretionary. Are there provisions in the statute for reuniting families that just don't apply here because of the date? Well, it's my understanding that there are exemptions for certain aliens who are found inadmissible from alien smuggling, but in this context, I don't believe that the petitioners are eligible for any exceptions. They might not be technically eligible, but Congress is telling us that reuniting the that they're thinking about. They really wanted to reunite families. That's what makes this case tough, isn't it? Well, certainly the facts of the case are sympathetic, and I do think that it can be a difficult result. However, I think that there... border crossing passes, and they have identified that, and I mentioned that in our brief, and it has resulted in a very massive problem in immigration in this country. So, therefore, even though there is a policy aimed at keeping the family together, I think there's also a concern that these border crossing passes are being abused, and perhaps easily so. But that's maybe a different problem. What we're looking at is whether this type of smuggling, if we call it smuggling, is intended to show that the people under this statute can't show good moral character. Well, I think the statute pretty clearly establishes that if there's a violation of the very broad language, then they are precluded. And I think that in this case, considering the facts in this case, that the immigration judge properly found that there was a violation. Okay. Anything further? If not, thank you. Thank you very much. I'll begin with addressing the Court's last concern. The same provision where that defines alien smuggling in 212, that's sub I. Sub 2 says except for those people who attempt to reunite their family. If you come within that provision. If. And if you don't come within that provision, then we're writing a new provision into the statute, right? That's not true, Your Honor. I think that goes towards the congressional intent. The service has made a point to say, well, let Congress define what good moral character means. And in this case, the Petitioner agrees. And if Petitioner's, or excuse me, if the service is correct, that Congress has been aware, apparently at least since 1996, that there has been so-called abuses of border crossing cards, they have not changed Section 212. And Section 212 continues to say, if you have a valid border crossing card, you are admissible. Now, turning to a moment to one of the service's other arguments, which is as far as the plain meaning of the statute. In this case, under Chevron, there is no ambiguity in the statute. And therefore, this Court is not obliged to accept the interpretation of the agency. Then, I guess finally on that, in this case, Bunker does not apply. Bunker was a case dealing with criminal alien smuggling. The facts are distinguishable in that case. Is this a case, in your view, where we should send it back and say, BIA, you don't have any precedent, you better do an opinion here? Your Honor, I think in this case, this Court could answer the question and remand it back to the immigration judge. There are enough facts and law in this case to establish that the entry in this case was not in violation of law. And again, the entry was not in violation of law in this case because the entry was made pursuant to violation of border crossing cards. Now, I understand that the Court might have some concern with the facts in this case. But just to alleviate some of the Court's concerns, the immigration judge or any immigration judge could find that such conduct perhaps fell under a different section of the INA. This is not alien smuggling, as I'm sure this Court quite often sees alien smuggling cases. As do I myself. I've never seen a case like this prosecuted in the Southern District, at least, of California for alien smuggling. Your Honor, to sum up here, what petitioners requesting this Court do is to not strike down the Rosas' only opportunity to be reunited with their United States citizen son who is suffering from grave medical problems. The only thing, a decision, the proper decision in this case, which would be to strike the immigration judge's ruling and remand for reconsideration, all it would do is give the case a chance to be reviewed. Thank you very much. All right. Thank you, Your Honor. Thank you, counsel, for your argument in this case. And the matter will be submitted.  We'll go next to your attorney. Thank you.
judges: B Fletcher, Rymer, Paez